324

[—— NYS2d ——]

In the Matter of JOSE A. QUESADA (Admitted as JOSE ALBERTO QUESADA), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 7, 1994

**APPEARANCES OF COUNSEL**

*Richard M. Maltz* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*S. Stanley Kreutzer* of counsel *(The Jacob D. Fuchsberg Law Firm),* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Jose A. Quesada, was admitted to the practice of law in New York by the First Judicial Department on June 19, 1978 under the name Jose Alberto Quesada. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.

By order of this Court entered February 4, 1992, respondent was suspended from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) on the grounds of his failure to cooperate with the Departmental Disciplinary Committee in its investigation, and uncontroverted evidence of professional misconduct, pending the outcome of disciplinary proceedings against respondent.

On or about January 15, 1993, respondent was served with a notice and statement of charges. The charges alleged that respondent failed to maintain escrow money intact for two separate clients, in violation of Code of Professional Responsibility DR 9-102 (A) and engaged in conduct adversely reflecting on his fitness to practice law in violation of DR 1-102 (A) (6).

Staff counsel advised the Hearing Panel that respondent had received two prior admonitions for neglect.

In its report, at the conclusion of the hearing, the Hearing Panel noted, *inter alia:*

"Staff counsel no longer alleges a failure to cooperate. Respondent has changed counsel and has cooperated fully since the time of his suspension.

"At our hearing the Panel requested all evidence that might show improper diversion of funds, and staff counsel conceded that there was no such evidence. Quesada himself states that he never improperly diverted funds and that the errors, for which we find he is sincerely contrite, arose from the press of business in an overburdened single practitioner's office which handled a large volume of small cases, and a staff inadequate to certain of the functions of a well run office. He states without contradiction that he has hired more effective bookkeeping assistants and promises that such a mistake will never again be repeated."

The Hearing Panel announced it had sustained Charges One and Four reflecting that respondent failed to maintain client funds intact and preserve the identity of client funds, in

violation of DR 9-102 (A) for both matters. The Hearing Panel did not sustain Charges Two and Three which alleged that respondent engaged in conduct which adversely reflects on his fitness to practice law in violation of DR 1-102 (A) (6).

The Hearing Panel recommended a sanction of suspension for a period of two years.

The Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's report and imposing the recommended sanction.

A review of the evidence presented to the Hearing Panel, particularly respondent's admissions, indicates that there is ample evidence to support the Hearing Panel's findings that respondent failed to maintain client funds intact and preserve the identity of client funds, in violation of DR 9-102 (A). No evidence was presented, however, to indicate that respondent converted any of the clients' funds to his own use or acted with venal intent. It appears that the shortfalls in respondent's escrow account at various times were the result of his failure to attend to bookkeeping matters and his delegating the task of depositing clients' checks to secretaries and receptionists. No client suffered a loss as a result of respondent's actions and full, prompt and complete payment of all disbursements and claims to all creditors and the balance due to the client in each of the matters charged was paid before charges were filed or even instituted by the Departmental Disciplinary Committee.

The lack of venal intent on the part of respondent distinguishes this case from the cases where attorneys have been disbarred for conversion. In cases where it has been found that the mishandling of client funds arose primarily out of an attorney's carelessness or the attorney was mistaken as to his entitlement to his client's funds and there was no motive to convert, the sanction imposed by this Court has been suspension from the practice of law for a period of two years. (See, Matter of Klugerman, 189 AD2d 284 [1st Dept 1993]; Matter of Altomerianos, 160 AD2d 96 [1st Dept 1990]; Matter of Altschuler, 139 AD2d 311 [1st Dept 1988].)

In the case at bar, the Hearing Panel recommended that respondent, who has been temporarily suspended by this Court since February 4, 1992, should be "suspended until the completion of these proceedings, which should be approximately two years." Since the Hearing Panel's recommendation is in accord with recent precedent of this Court and respon-

dent did not present any compelling mitigation that would warrant less than a two-year suspension, we accept that recommendation.

Accordingly, the Disciplinary Committee's petition should be granted; the Hearing Panel's report should be confirmed and the recommended sanction imposed. Respondent is, therefore, suspended from the practice of law for a period of two years, nunc pro tunc, from February 4, 1992, the date of the Court-ordered interim suspension.

In view of the fact that no issue has been raised that respondent has failed to comply with the interim order of suspension, respondent is reinstated to the practice of law, effective immediately, without further proceedings. It does not appear that any purpose would be served to compel respondent to withstand a lengthy reinstatement proceeding at this point and such would unduly prolong the length of respondent's suspension.

SULLIVAN, J. P., KUPFERMAN, ROSS, ASCH and NARDELLI, JJ., concur.

Respondent is reinstated as an attorney and counselor-at-law in the State of New York, effective April 7, 1994.